

U.S. Department of Justice

*United States Attorney
Southern District of New York*

*The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007*

May 17, 2021

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Darrell Goodman*, 19 Cr. 385 (AKH)

Dear Judge Hellerstein:

      The Government respectfully submits this letter to advise the Court of the pertinent facts concerning the assistance that the defendant, Darrell Goodman has rendered in the investigation and prosecution of others. In light of these facts, and assuming that Goodman continues to comply with the terms of his cooperation agreement and commits no additional crimes before sentencing, the Government intends to move at sentencing, pursuant to Section 5K1.1 of the United States Sentencing Guidelines (the "Guidelines") and Section 3553(e) of Title 18, United States Code, that the Court sentence Goodman in light of the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines. Goodman's sentencing is scheduled for May 24, 2021, at 2:30 p.m.

      As the Government advised the Court by letter dated September 9, 2020, Goodman's case is related to the cases *United States v. Joseph Bailey*, 19 Cr. 412 (WHP), and *United States v. Chuck Frei*, 18 Cr. 822 (JSR). On September 21, 2020, Frei (who, like Goodman, pleaded guilty to a cooperation agreement) was sentenced by Judge Rakoff to time served and three years' supervised release. On December 22, 2020, Bailey was sentenced by Judge Pauley to 6 months' incarceration and three years' supervised release.

### Background & Offense Conduct

      From 2007 until 2005, Goodman, the operations manager of Stargate, a children's clothing company, participated in two schemes intended to evade customs duties on goods imported by Stargate into the United States from China. Both schemes were carried out at the behest of Stargate's CEO and owner, Joseph Bailey.

1

The first scheme, spanning from approximately 2007 to 2010 was a "double-invoicing" scheme pursuant to which the Chinese manufacturer would provide two sets of invoices—one invoice in a significantly higher amount that reflected the true value of the goods, which was used to make payment to the manufacturer (the "Pay By Invoice"), and a second invoice in a lower amount that was presented to the United States Customs & Border Protection ("Customs") and used to calculate the duty owed (the "Customs Invoice"). (PSR ¶ 15). This scheme allowed Stargate to fraudulently lower the amount of customs duty paid. (*Id.*).

In approximately 2010, Goodman and his co-conspirators switched to a new scheme, in which the Chinese manufacturer sent two invoices which together reflected the true amount paid by Stargate for the goods. The first invoice, labeled the "Commercial Invoice," identified the goods purchased and was submitted to Customs. The second invoice purported to identify "samples" which were purchased by Stargate. The "samples" invoice was not submitted to Customs. (PSR ¶ 16). However, the "samples" invoice did not reflect actual purchases of sample goods. Indeed, on their face, the "samples" invoices were not plausible. Among other things, these invoices reflected per unit prices that were wildly unrealistic (*e.g.*, 70 to 90 dollars per unit on the samples invoice versus a $4 per unit price on the commercial invoice). Because sample goods are not subject to duty, the "samples" invoices were a means to make an additional payment to the manufacturer for the goods purchased without disclosing it to Customs. (PSR ¶ 17).

In sum, Stargate undervalued the goods it brought into the United States from this one manufacturer by more than $15 million, resulting in a loss of revenue to the United States of approximately $1.66 million.

### Goodman's Cooperation

The investigation into customs fraud at Stargate began in the Civil Division in November 2014, when a *qui tam* complaint was filed in the Southern District of New York against Joseph Bailey, Stargate and Rivstar (another of Bailey's companies). *See United States, ex. rel John Doe v. Stargate, et al.*, 14-cv-08991 (JPO). The investigation was referred to the Criminal Division in April 2017.[1] In May 2018, Goodman began proffering with the Government.[2]

As part of Goodman's cooperation, he met with the Government numerous times to debrief prosecutors and agents about the other targets' activities and the scheme under investigation. His information proved invaluable at the investigative stage in explaining how the scheme worked,

---

[1] The United States filed a notice of intervention in the *qui tam* in February 2019 and filed a complaint-in-intervention in April 2019. The civil matter was unsealed on June 6, 2019. At this time, the civil matter is stayed pending resolution of the criminal proceedings in *United States v. Bailey*, 19 Cr. 412 (WHP).

[2] Goodman's first proffer with the Criminal Division was in May 2018. Before the investigation was referred to the Criminal Division, in or about February 2017, Goodman had been voluntarily interviewed by the Civil Division.

and the dynamics among the various co-conspirators. In his proffers, Goodman was reliable and well-corroborated. He was forthcoming not only about the conduct of others, but his own conduct. He also provided documents to the Government to assist in its investigation.

Goodman's assistance was particularly significant because this investigation required the Government to understand the technical aspects of Stargate's invoicing and accounting processes. Without Goodman's assistance, it would have been difficult for the Government to decipher those documents. In particular, Goodman was able to explain how the funds that were paid to the Chinese manufacturer, but not reported to Customs, were accounted for in the company's books. This information was extremely helpful evidence of the scheme and the intent of the participants.

Goodman also provided important information about the role of Joseph Bailey, the CEO of Stargate, in the scheme. Among other things, Goodman's information made clear that Bailey had conceived of the scheme and continued to pursue it, even after Goodman himself told Bailey that he should stop. Although Bailey ultimately pleaded guilty, the Government had anticipated that Goodman's testimony at trial would provide significant evidence of Bailey's direct knowledge of, and involvement in, the scheme.

Finally, it is important to note that customs fraud is a notoriously difficult crime to investigate and prosecute. Without the assistance of insiders at companies that perpetrate this kind of fraud, it can be difficult to uncover. Goodman's candor and information were crucial to allowing the Government to hold individuals accountable for a type of fraud that is extremely costly to U.S. taxpayers and damaging to the integrity of the U.S. Customs system.

## Section 5K1.1 Factors

Goodman's cooperation has been substantial for all of the reasons described above.

Applying his cooperation to the non-exclusive criteria set forth in U.S.S.G. § 5K1.1, (1) Goodman's cooperation was significant and useful in the investigation and prosecution of participants in a years-long customs fraud (U.S.S.G. § 5K1.1(a)(1)); (2) Goodman's information was truthful, complete, and reliable, both with respect to his actions and the actions of others (U.S.S.G. § 5K1.1(a)(2)); (3) the nature and extent of Goodman's cooperation which, through numerous meetings with the Government, allowed it to charge other individuals, was substantial (U.S.S.G. § 5K1.1(a)(3)); and (4) Goodman's cooperation occurred in sufficient time for the Government to identify and develop evidence against other individuals, and was timely (U.S.S.G. § 5K1.1(a)(5)).

**Conclusion**

      In light of the facts set forth above, and assuming Goodman continues to comply with the terms of his cooperation agreement, commits no additional crimes before sentencing, and appears for his sentencing as scheduled, the Government intends to request at sentencing, pursuant to Section 5K1.1 of the Guidelines and Section 3553(e) of Title 18, United States Code, that the Court sentence Goodman in light of the factors set forth in Section 5K1.1 of the Guidelines.

      Respectfully submitted,

      AUDREY STRAUSS
      United States Attorney

By: *Dina McLeod*
      Dina McLeod
      Dominika Tarczynska
      Assistant United States Attorneys
      (212) 637-1040/ -2748

cc: Daniel Horwitz, Esq. and Tracy Burnett, Esq. (counsel for Darrell Goodman) (by ECF)